IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CRYSTAL STINSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-810-M-BN |
| | § | |
| KEVIN MCGINNIS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Through a first amended complaint [Dkt. No. 19] (the "FAC"), Plaintiff Crystal
Stinson, a former assistant professor at the Texas A&M University College of
Dentistry (the "University"), brings claims of discrimination, retaliation, and
harassment based on color and/or race, in violation of 42 U.S.C. §§ 1981 and 1983,
against Defendants Daniel Jones, Joshua Liescheski, and Kevin McGinnis, current
and former employees of the University.

McGinnis and Jones moved to dismiss the claims asserted against them in the
FAC. *See* Dkt. Nos. 25, 26, & 28-30. The parties briefed the motions. *See* Dkt. Nos.
36, 37, 40, & 41. Senior United States District Judge Barbara M. G. Lynn then
referred this case to the undersigned United States magistrate judge for pretrial
management under 28 U.S.C. § 636(b). *See* Dkt. No. 42.

The undersigned now enters these findings of fact, conclusions of law, and
recommendation that, for the reasons and to the extent set out below, the Court
should grant the motions in part and deny the motions in part.

## Applicable Background

Through the FAC, Stinson, an African American female, alleges that, while employed by the University, she worked in a hostile environment caused by Jones and Liescheski and that this hostility was based on race.

And Stinson alleges that Jones and Liescheski "focused their scorn and harassing behavior on people of color – primarily females of color like Stinson" and that, "[t]o date, at least eleven current or former employees of the University who worked for Jones and/or Liescheski have experienced the same or similar harassment as Stinson." Dkt. No. 19, ¶ 13; *see id.*, ¶¶ 14 & 15 (identifying other employees by race, color, ethnicity, and gender); *see also* Dkt. No. 37 at 6 ("Jones's harassment of [Stinson] began when she reported that Jones made a death threat against another professor of color. Thereafter, Jones is alleged to have engaged in a pattern of harassment that interfere[ed] with her work, being directly hostile to her, and even included breaking into Stinson's office as well as numerous other acts of harassment that ultimately lead Stinson to have medical injuries.").

Stinson also asserts that McGinnis (alleged to currently be the University's Vice President of Operations and Chief Compliance Officer) failed in his

> duty to stop the racial harassment and physical intimidation being conducted by Jones and Liescheski against professors of color. McGinnis conducted an investigation and/or otherwise became aware that Stinson and other professors of color at the Dental College were being subjected to systemic racial harassment. However, instead of stopping that racial harassment, he swept the charges under the rug, and even asked Dr. Stinson to not report the criminal misconduct of Jones and Liescheski to the police.

*E.g.*, Dkt. No. 19, ¶ 4.

**Legal Standards**

McGinnis and Jones move for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the first of which facilitates challenges to the Court's subject matter jurisdiction.

"Jurisdiction is the power to say what the law is." *United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023). So consideration of "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (citation omitted).

Under their limited jurisdiction, federal courts generally may only hear a case if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331 & 1332.

Applicable here, federal question jurisdiction under Section 1331 "exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28 (1983)).

And, while McGinnis and Jones both cite Rule 12(b)(1), in substance, their motions do not challenge the Court's subject matter jurisdiction but assert that the Court should refrain from exercising it, under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Cf. Weekly v. Morrow*, 204 F.3d 613, 614-15 (5th Cir. 2000) ("Federal courts do not abstain … because they lack jurisdiction; rather, [ ] abstention 'reflects a court's prudential decision not to exercise

[equity] jurisdiction which it in fact possesses.'" (footnotes omitted)); *New Orleans Pub. Serv., Inc. v. City Council of New Orleans*, 491 U.S. 350, 359 (1989) (Federal courts possess "discretion in determining whether to grant certain types of relief – a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted. Thus, there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is the normal thing to do. We have carefully defined, however, the areas in which such abstention is permissible, and it remains the exception, not the rule." (cleaned up)).

> A *Colorado River* abstention analysis begins with a heavy thumb on the scale in favor of exercising federal jurisdiction, and that presumption is overcome only by "exceptional circumstances." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006). Federal courts have a virtually unflagging obligation ... to exercise the jurisdiction given them. *Colo. River*, 424 U.S. at 817. Even so, a court may choose to abstain, awaiting the conclusion of state-court proceedings in a parallel case, based on principles of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. *Id.*

*Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018) (cleaned up).

And, more recently, the en banc United States Court of Appeals for the Fifth Circuit "paraphrase[d]" the United States Supreme Court to elaborate on the relationship between subject matter jurisdiction and abstention: "a federal court may not rule on the merits of a case without first determining its jurisdiction, but there is no mandatory 'sequencing of jurisdictional issues,' and a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Daves v. Dall. Cnty., Tex.*, 65 F.4th 616, 623 (5th Cir. 2023) (en banc) (quoting *Sinochem*

*Int'l v. Malay. Int'l Shipping*, 549 U.S. 422, 431 (2007); footnotes omitted); *see also id.* (for example, "[a]s *Sinochem* further illustrated, 'a federal court [need not] decide whether the parties present an Article III case or controversy before abstaining under *Younger v. Harris*'" (quoting 549 U.S. at 431)); *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1090 (5th Cir. 2023) ("Just as we must ensure the existence of our subject-matter jurisdiction, we must also ensure that exercising it does not offend principles of 'Our Federalism.'" (footnote omitted)).

Considering a motion under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see, e.g.*, *Parker v. Landry*, 935 F.3d 9, 17 (1st Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied.").

While Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, it does require that a plaintiff allege more than labels and conclusions. So, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

And, so, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

Accordingly, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Qualified immunity is a basis to dismiss a lawsuit under Rule 12(b)(6). And, "[w]here public officials assert qualified immunity in a motion to dismiss, [district courts] must rule on the motion." *Carswell v. Camp*, 54 F.4th 307, 310, 311 (5th Cir. 2022); *see also Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (where the defense applies and is raised in good faith, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity").

But, because a plaintiff "need not anticipate a qualified immunity defense," *Fisher v. Dall. Cnty.*, 299 F.R.D. 527, 532 (N.D. Tex. 2014), the Rule 12(b)(6) standards are "not heightened … [w]hen a plaintiff pleads a § 1983 claim that implicates qualified immunity," *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) (citing *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020)); *see also Todd v. Hawk*, 72 F.3d 443, 445 n.7 (5th Cir. 1995) ("Racial discrimination claims brought under § 1981 are subject to the defense of qualified immunity." (citing *Saunders v. Bush*, 15 F.3d 64 (5th Cir. 1994))).

Instead, a plaintiff need only "plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Allen*, 65 F.4th at 744 (quoting *Arnold*, 979 F.3d at 267).

That is, "a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold*, 979 F.3d at 267; *accord Babinski v. Sosnowsky*, 79 F.4th 515, 519-20 (5th Cir. 2023) ("A plaintiff attempting to overcome qualified immunity at the Rule 12(b)(6) stage must plead facts that allow

this court to reasonably infer that the defendant is liable for the harm alleged." (citing *Arnold*, 979 F.3d at 267)).

Even so, pleading a plausible violation of federal law is only one prong of the qualified immunity analysis. So, as explained in more detail below, for a plaintiff to overcome qualified immunity, she must also show "that the right was clearly established" – "'[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *limited by Pearson v. Callahan*, 555 U.S. 223 (2009)).

McGinnis and Jones further assert that this lawsuit should be dismissed based on claim splitting, a challenge which may be raised under Rule 12(b)(6). *See generally Armadillo Hotel Grp, L.L.C. v. Harris*, 84 F.4th 623 (5th Cir. 2023).

> "The rule against claim splitting prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants." *General Land Off. v. Biden*, 71 F.4th 264, 269-70 (5th Cir. 2023). The rule is based on principles of *res judicata* and "protect[s] the defendant from being harassed by repetitive actions based on the same claim." *Id.* at 270 (quoting *In re Super Van, Inc.*, 92 F.3d 366, 371 (5th Cir. 1996)). Because the prohibition against claim splitting rests on *res judicata* principles, [courts in this circuit] rely on *res judicata*'s four-part test: (1) the parties in the current action are the same or "in privity with the parties in the prior action"; (2) "the court that rendered the prior judgment" was a "court of competent jurisdiction"; (3) the prior action "terminated with a final judgment on the merits"; and (4) the "same claim or cause of action" is "involved in both suits." *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994).
> This test is modified when the prior suit is pending because, by definition, no final judgment from the prior suit exists. *See Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985); 18 CHARLES ALAN WRIGHT,

ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND
PROCEDURE § 4406 (3d ed.). Accordingly, in the context of claim splitting
when an earlier suit is pending, the relevant *res judicata* factors are (1)
whether the parties are the same or in privity and (4) whether "the same
claim or cause of action" is "involved in both suits." *Gulf Island-IV*, 24
F.3d at 746; *Oliney*, 771 F.2d at 859.

*Id.* at 628 (citation modified).

## Analysis

First, although both McGinnis and Jones invoke Rule 12(b)(1), neither credibly

challenges the Court's subject matter jurisdiction where Stinson alleges more than

insubstantial violations of Sections 1981 and 1983. So, the Court possesses

jurisdiction over this lawsuit, and any relief requested under Rule 12(b)(1) should be

denied.

And, because Stinson brings claims under Sections 1981 and 1983 for racial

discrimination against former and current state employees in this lawsuit, while

alleging violations of the Texas Labor Code against the University in a separate state-

court proceeding, the undersigned begins with "the interplay – sometimes conflicting

– between Title VII, § 1981, § 1983, and, most especially, qualified immunity in a

racial discrimination action brought by a state employee against his co-state

employees and his state employer," which the Fifth Circuit "extensively" examined in

*Felton v. Poles*, 315 F.3d 470 (5th Cir. 2002), *abrogated on other grounds by*

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). *Felton*, 315 F.3d at

474; *cf. Fields v. Kelley*, No. 3:23-cv-1565-S-BN, 2023 WL 6299858, at *2 (N.D. Tex.

Aug. 8, 2023) ("[C]laims under Chapter 21 are analyzed as Title VII claims, because

'[t]he legal framework governing claims under [Chapter 21 of the Texas Labor Code]

is the same as for claims brought under Title VII.'" (quoting *Khalfani v. Balfour Beatty Cmtys., L.L.C.*, 595 F. App'x 363, 365 n.1 (5th Cir. 2014) (per curiam))), *rec. accepted*, 2023 WL 6300701 (N.D. Tex. Sept. 26, 2023).

"In *Felton*, [the Fifth Circuit] noted that 'the express "action at law" provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.'" *Montgomery-Smith v. George*, 810 F. App'x 252, 256 (5th Cir. 2020) (per curiam) (quoting *Felton*, 315 F.3d at 482 (5th Cir. 2002) (quoting, in turn, *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989))).

So, where the individual defendants are "state actors because they are state employees," "for [the plaintiff] to recover damage from [them] for alleged violations of rights secured by § 1981, those claims must be asserted through § 1983." *Id.* (citing *Felton*, 315 F.3d at 482 ("[S]tate employment is generally sufficient to render the defendant a state actor." (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982)))).

This interplay also underlies an analysis of Defendants' requests that the Court not reach the merits of this case. And, so, the undersigned begins there.

## I.    The Court should neither refrain from exercising its jurisdiction under *Colorado River* nor dismiss this case under Defendants' claim-splitting contentions.

Under *Colorado River*, "[w]hether to abstain is not a question answered by the recitation of 'a mechanical checklist' but instead rests 'on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in

favor of the exercise of jurisdiction.'" *Aptim*, 888 F.3d at 135 (quoting *Moses H. Cone*

*Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

> To determine whether exceptional circumstances are present, the court considers the following six factors:
>> (1) assumption by either court of jurisdiction over a res, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Id.* at 135-36 (quoting *Stewart*, 438 F.3d at 491).

But, for *Colorado River* to apply at all, there must be "state-court proceedings

in a parallel case." *Id.* at 135; *accord Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395

n.7 (5th Cir. 2006) ("This doctrine only applies when there are parallel proceedings

pending in federal and state court." (citing *RepublicBank Dall., Nat'l Ass'n v.*

*McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987))).

"Suits are 'parallel' if they 'involve the same parties and the same issues.'"

*Brown*, 462 F.3d at 395 n.7 (cleaned up; quoting *McIntosh*, 828 F.2d at 1121 (quoting,

in turn, *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973))).

And, "[a]lthough it is well-established that the *Colorado River* abstention

doctrine cannot be invoked to avoid federal jurisdiction where suits are not parallel,"

the Fifth Circuit has "recognized that 'it may be that there need not be applied in

every instance a mincing insistence on precise identity' of parties and issues." *Id.*

(quoting *McIntosh*, 828 F.2d at 1121; citation omitted).

Even so, a state-court proceeding in which the sole defendant is the University

and the only claims are for wrongful employment actions is not parallel to this Section

1983 proceeding against individuals sued in their personal capacity, and "there is no likelihood that the state litigation will dispose of all claims presented in the federal case." *Davis v. Matagorda Cnty.*, No. 3:18-CV-00188, 2019 WL 1015341, at \*11 (S.D. Tex. Mar. 4, 2019) ("As a threshold matter, the Court is not persuaded that the state court lawsuit and the federal lawsuit are parallel proceedings. This inquiry is a show stopper since the *Colorado River* abstention doctrine only applies when federal and state cases are parallel. The reason why is two-fold. First, the parties are not the same. The County is the only defendant in the state court lawsuit but the federal case includes Anders and Commissioner Gibson as defendants. Second, the issues are not the same in both cases. The state court lawsuit only alleges violations of the Texas Whistleblower Act. Meanwhile, the federal lawsuit asserts claims brought under Section 1983 for race discrimination, hostile work environment, and First Amendment retaliation.… Because there is no likelihood that the state litigation will dispose of all claims presented in the federal case, the federal and state lawsuits cannot be considered parallel proceedings. The *Colorado River* abstention doctrine is therefore inapplicable."), *rec. adopted*, 2019 WL 1367560 (S.D. Tex. Mar. 26, 2019); *cf. McIntosh*, 828 F.3d at 1121 ("Even in the instance of truly parallel cases, one pending in state and the other in federal court, current Supreme Court authority indicates that 'only the clearest of justifications' will warrant the federal court's staying its hand." (citations omitted)).

Similarly, where "[t]he rule against claim splitting [is limited to] a party or parties in privity," *General Land Off.*, 71 F.4th at 269, a lack of privity between the

parties in the two proceedings that Stinson has filed prevents dismissal based on claim splitting.

Stinson filed the state-court proceeding against the University. But, in this proceeding, Stinson seeks damages from individual defendants sued in their personal capacities.

And courts in this circuit follow the "general view" that, "[b]ecause 'different legal theories may be necessary to prove liability in a personal-capacity, as opposed to an official-capacity, case and different defenses are available to a defendant who is sued in his personal capacity, courts do not generally consider an official sued in his personal capacity as being in privity with the government.'" *Benson v. City of Tex. City., Tex.*, No. 3:13-CV-23, 2014 WL 948901, at *4 (S.D. Tex. Mar. 11, 2014) (cleaned up; quoting *Conner v. Reinhard*, 847 F.2d 384, 395 (7th Cir. 1988); citing *Warnock v. Pecos Cnty., Tex.*, 116 F.3d 776, 778 (5th Cir. 1997)); *see id.* (explaining that, in *Warnock*, "the plaintiff brought section 1983 claims against state district judges in their individual capacities, alleging that they refused to reappoint her in retaliation for whistleblowing. An earlier state court suit against the County had been unsuccessful. The Fifth Circuit rejected the argument that the individual defendants were in privity with the County, explaining that '[r]es judicata does not apply when the parties appear in one action in a representative capacity and in a subsequent action in an individual capacity.'" (quoting 116 F.3d at 778 (quoting, in turn, *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 188 (5th Cir. 1990)))); *see also Welsh v. Lamb Cnty., Tex.*, No. 5:20-cv-77-C-BQ, 2024 WL 2742696, at *12 (N.D. Tex. Apr. 30,

2024) ("Federal courts have consistently held that a government official sued in his official capacity is in privity with the related governmental entity, and vice versa. Courts, however, have also consistently declined to bar claims against a governmental entity when claims were previously brought against an official in his individual capacity." (emphasis omitted; collecting cases)), *rec. adopted*, 2024 WL 2734984 (N.D. Tex. May 28, 2024).

## II. The Court should grant the motions to dismiss to the extent that Stinson fails to plead specific facts that allow the Court to reasonably infer that either defendant is liable for the harms alleged and that defeat each defendant's qualified immunity defense.

Stinson brings, against individuals alleged to have acted under color of state law, claims of discrimination that, if asserted against individuals in the private sector, would be actionable under Section 1981. So, as explained above, Stinson's claims are made under Section 1983.

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)); *see also Arnold*, 979 F.3d at 266 ("To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must plead 'two – and only two – allegations .... First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980))).

"But government officials performing discretionary duties" can respond to such

a claim by asserting qualified immunity. *Rich*, 920 F.3d at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

And, if they do, a court must consider each official's actions separately, *see Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007), on an expedited basis, *see Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021), "because qualified immunity is 'not simply immunity from monetary liability' but also 'immunity from having to stand trial,'" *Arnold*, 979 F.3d at 267 (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018)).

Where a government official asserts qualified immunity through a motion to dismiss, "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims." *Id.* (citations omitted).

And, while "an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard," *id.* (citations omitted), "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity," *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

"That is, a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold*, 979 F.3d at 267.

Or, put another way, because the "qualified-immunity inquiry is two-pronged," *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*,

957 F.3d 596, 600 (5th Cir. 2020)), to survive a motion to dismiss asserting qualified immunity, a plaintiff's pleading must yield a "yes" to two questions:

- Do "the facts, viewed in the light most favorable to the party asserting the injury, [plausibly allege] that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600).

- Was "the right at issue … 'clearly established' at the time of the alleged misconduct"? *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson*, 555 U.S. at 232).

At the pleadings stage, the first question is typically straightforward. *Cf. Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) ("The defense of qualified immunity 'alters the usual summary judgment burden of proof.' Once a defendant properly raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense's protection." (citations omitted)).

But, regardless of when it's considered, the clearly established question can be "a doozy." *Morrow*, 917 F.3d at 874. That is, "[t]he 'clearly established' prong is difficult to satisfy." *Cunningham*, 983 F.3d at 191; *cf. Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) ("We are bound by the restrictive analysis of 'clearly established' set forth in numerous Supreme Court precedents.").

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez*, 3 F.4th at 133 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Id.* at 133-34.

And the plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova*, 994 F.3d at 726 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

"There are two ways to demonstrate clearly established law" and meet this additional burden to make this second showing. *Id.*

Typically, the plaintiff must "'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances was held to have violated the Constitution.'" *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (cleaned up); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "controlling authority – or a 'robust consensus of [cases of] persuasive authority' – that defines the contours of the right in question with a high degree of particularity." (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))); *see, e.g.*, *Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly established." (footnote omitted)).

"It is the plaintiff's burden to find a case in her favor that does not define the law at a high level of generality." *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (cleaned up; quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018)). Thus, the "clearly established law" "must be 'particularized' to the

facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up). And a clearly established right must be defined "with specificity." *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam)).

"The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (citations omitted). "In other words, 'there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *D.C. v. Wesby*, 583 U.S. 48, 64 (2018)); *accord Batyukova*, 994 F.3d at 726.

"[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

And, so, "plaintiffs are only excused of their obligation to identify an analogous

case in 'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 3 F.4th at 206 (quoting *Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam)).

Here, Stinson cites a published decision from the Fifth Circuit, *Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019), identifying "multiple cases in which [the Court of Appeals has] considered race-based hostile work environment claims asserted under section 1983," and remarking that, "[e]ven without all this caselaw, it would necessarily follow that if the Constitution makes it unlawful to create a hostile workplace in response to a public employee's sex, then it is also unlawful to engage in that hostility in response to a worker's race. After all, the latter category of discrimination is subject to even more exacting constitutional scrutiny than the former." *Id.* at 417 (citations omitted).

And *Halstead* discussed clearly established law as to racial retaliation claims:

> [W]e have repeatedly explained that "[r]etaliation claims under § 1981 and Title VII ... are parallel causes of action," which means they "require[ ] proof of the same elements in order to establish liability." *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003); *see also Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) ("This Court considers claims of intentional discrimination, which include racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981, under the same rubric of analysis."). Applying that principle, we readily concluded that *Burlington Northern*'s "materially adverse" standard governs a section 1981 retaliation claim. *See Mendoza v. Helicopter*, 548 F. App'x 127, 129-30 (5th Cir. 2013). Granted, *Mendoza* is not published and was decided a few months after Johnson's transfer[, the alleged retaliatory act]. But in viewing application of *Burlington Northern* to section 1981 as so straightforward – it just took reciting the principle that "the law regarding his § 1981 retaliation claims tracks the Title VII jurisprudence" – *Mendoza* shows that the adverse action standard is an obvious consequence of our repeated command to analyze Title VII and section 1981 retaliation claims in sync. *Cf. Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (recognizing that there is no immunity defense when a constitutional violation is

"obvious"). If that is not enough, a robust consensus of persuasive authority existed on this question at the time of Johnson's transfer, as six circuits by then had applied the "materially adverse" standard to section 1981.

916 F.3d at 420 (citation modified; citations omitted).

Both theories of liability plausibly apply to Stinson's allegations against Jones.

*Halstead* further set out clearly established law as to the deliberate indifference required to subject McGinnis to liability under a hostile work environment claim:

> [F]or Halstead to be liable, it is not enough that Johnson was subject to a hostile work environment. Halstead must have been deliberately indifferent to this racially hostile work environment. *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994) (en banc)). This is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. of the Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)). Johnson thus must allege that "repeated complaints of civil rights violations" were followed by "no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

916 F.3d at 418 (citation modified).

And, so, "[g]iven that the Equal Protection Clause protects against a racially hostile work environment [and retaliation at work based on race], the question becomes whether [Stinson] has sufficiently alleged that was what [s]he faced." *Id.* at 417.

Starting with Stinson's claim that Jones caused a hostile work environment based on race, "[a] claim for hostile work environment is a type of disparate treatment claim." *Jasso v. Midland-Odessa Transit Mgmt., Inc.*, MO:22-CV-00250-DC-RCG, 2023 WL 6474435, at *2 n.2 (W.D. Tex. Sept. 19, 2023) (citing *Harris v. Forklift Sys.*,

*Inc.*, 510 U.S. 17, 21 (1993)), *rec. adopted*, 2023 WL 6466237 (W.D. Tex. Oct. 4, 2023).

"A hostile work environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Halstead*, 916 F.3d at 417 (quoting *Harris*, 510 U.S. at 21); *accord Hudson v. Lincare, Inc.*, 58 F.4th 222, 229 (5th Cir. 2023).

To prove such a claim "requires (1) membership in a protected group; (2) harassment (3) based on a factor rendered impermissible by [the applicable statute]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment yet failed to address it promptly." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

But, to plausibly allege a hostile work environment claim in this context – and defeat qualified immunity with equal specificity – Stinson need only "plead sufficient facts *on all of the ultimate elements*' of [the] claim." *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); emphasis in *Norsworthy*).

And, at this stage, "a plaintiff must plead two 'ultimate elements' in order 'to support a disparate treatment claim … : (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" *Thomas v. Dall. Indep. Sch. Dist.*, No. 23-10882, 2024 WL 2874367, at *4 (5th Cir. June 7, 2024) (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019); emphasis in *Cicalese*).

That is,

> "[a] complaint need not allege "each prong of the prima facie test for disparate treatment" ... ; to support a disparate treatment claim ... , though, it must plausibly set out facts that the "defendant took the adverse employment action against a plaintiff *because of* her protected status." [Accordingly, a] plaintiff must allege "facts, direct or circumstantial, that would suggest [the employer's] actions were based on [the plaintiff's protected status] or that [the employer] treated similarly situated employees of other races or national origin more favorably."

*Sanchez v. Chevron N. Am. Exploration & Prod. Co.*, No. 20-30783, 2021 WL 5513509, at *5 (5th Cir. Nov. 24, 2021) (per curiam) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013); emphasis in *Raj*)); *see also Jasso*, 2023 WL 6474435, at *2 ("To survive a motion to dismiss, a plaintiff pleading a claim for hostile work environment must plead two 'ultimate elements': 1) an adverse employment action, 2) taken against a plaintiff because of her protected status." (citing *Cicalese*, 924 F.3d at 767)); *Pfang v. Lamar Inst. of Tech.*, 685 F. Supp. 3d 425, 444 (E.D. Tex. 2023) ("The ultimate elements of a hostile work environment claim are an employer has created a working environment heavily charged with discrimination." (cleaned up)).

Here, Stinson fails to plead "factual content that allows" for "the reasonable inference," *Iqbal*, 556 U.S. at 678, that the hostile work environment created by Jones was because of race and thus fails to plausibly allege a "race-based hostile work environment claims [ ] under section 1983," *Halstead*, 916 F.3d at 417.

To start, Stinson does allege that Jones's "scorn and harassing behavior" was "focused" "on people of color – primarily females of color like Stinson." Dkt. No. 19, ¶ 13 ("To date, at least eleven current or former employees of the University who worked for Jones and/or Liescheski have experienced the same or similar harassment

as Stinson.").

Stinson also identifies "similarly situated professors or dental professionals who were likewise discriminated against and harassed based on race and/or on color by Jones and Liescheski." *Id.*, ¶ 15.

And the death threat that Stinson allegedly overheard Jones make – "that he was going to blow another faculty member's head off and strangle him to death" – was toward "a minority person of color." *Id.*, ¶ 30 ("Further, Jones stated that he planned to make a false report that two minority faculty members were having an affair, in an attempt to have them fired."); *see also id.*, ¶ 51 ("Jones created and sent out a survey to faculty members in order to evaluate the new Clinic Director, a person who reported Jones's breaking into Stinson's office. In the evaluation, Jones sought to discredit the Clinic Director and another minority faculty member in a leadership position.").

Jones's alleged "harassment of [people of color] other than [Stinson] is relevant to a hostile work environment claim." *Hernandez*, 670 F.3d at 653 (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477-78 (5th Cir. 1989) ("Even a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive." (cleaned up; quoting *Vinson v. Taylor*, 753 F.2d 141, 146 (D.C. Cir. 1985)))); *see also Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1109-10 & n.9 (5th Cir. 1995) ("There is no proscription of evidence of discrimination against other members of the plaintiff's protected class; to the contrary, such evidence may be highly probative, depending on

the circumstances." (collecting cases)).

But Stinson's allegations concerning Jones's harassment of other similarly situated employees are conclusory. For example, she alleges that "[t]he conduct of Jones and Liescheski was based on race"; that the current or former employees identified "experienced the same or similar harassment as" she did; and that they "were likewise discriminated against and harassed based on race and/or on color by Jones and Liescheski." Dkt. No. 19, ¶¶ 13 & 15. These "naked assertions devoid of further factual enhancement" that, to an extent, also count as "legal conclusions" should not be "presume[d] true." *Armstrong*, 60 F.4th at 269.

And, even where discrimination of others similarly situated to the plaintiff has been considered, the disparate treatment claim was also supported by assertions or evidence of similar discrimination "targeting the plaintiff." *Hernandez*, 670 F.3d at 653 ("In *Waltman*, we also found extensive evidence of sex discrimination targeting the plaintiff, including 'evidence that several different employees touched her in a sexual manner and directed sexual comments toward her,' and 'evidence of ongoing sexual graffiti on the walls, and in the elevator and bathroom.'" (quoting *Waltman*, 875 F.2d at 477)).

But, here, as to the alleged hostility targeting Stinson, she fails to allege facts from which the Court could infer that the hostile acts were because of Stinson's race or color.

That is, after reviewing the FAC, the undersigned is left with an impression that Jones was hostile toward Stinson. But, because each hostile act cited lacks

factual content based on race or color, the Section 1983 claim is pinned on the conclusory assertion and/or legal conclusion that Jones discriminated against other employees like Stinson, so his hostility toward Stinson must be based on her race or color.

This is not enough to nudge a hostile work environment claim under Section 1983 across the line from possible to plausible and, equally, is not enough to demonstrate that Jones is not entitled to qualified immunity on this claim.

Because Stinson has not alleged that she was subjected to a hostile work environment in violation of Section 1983, she has not alleged that McGinnis was "deliberately indifferent to [a] racially hostile work environment." *Halstead*, 916 F.3d at 418. And, so, she has not pleaded a plausible claim against McGinnis and, equally, has not demonstrated that he is not entitled to qualified immunity.

And, although Stinson has not demonstrated that Jones and McGinnis are not entitled to qualified immunity under a lesser burden, the burden to plausibly plead a Section 1983 hostile work environment claim, and, equally, to demonstrate that a defendant is not entitled to qualified immunity (if asserted in good faith), has likely ratcheted up since *Halstead* was decided.

That is because *Halstead* was decided prior to *Comcast Corp. v. National Association of African American-Owned Media*, 589 U.S. 327 (2020), in which the Supreme Court made clear that, under Section 1981, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right," *id.* at 341. *See Ramirez v. Merritt*, No. SA-19-CV-

00592-JKP-HJB, 2020 WL 13610413, at *4 (W.D. Tex. May 18, 2020) ("A plaintiff who sues under § 1981 must plead and prove the conduct was a 'but for' cause of his injury; 'while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant.'" (quoting *Comcast*, 587 U.S. at 333)); *see also Blash v. City of Hawkinsville*, 856 F. App'x 259, 264 n.3 (11th Cir. 2021) (per curiam) ("For the most part, we use the same legal framework to analyze employment discrimination claims under Title VII, § 1981, and § 1983. But while Blash can succeed on his Title VII claim by proving that his race was a 'motivating factor' in the decision to terminate him, his § 1983 claim against Cape requires more – to prevail on a claim that the defendant violated § 1981, 'a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.'" (citations omitted)); *Rodemaker v. Shumphard*, 859 F. App'x 450, 451-53 (11th Cir. 2021) (per curiam) ("In an employment-discrimination context, the elements for §§ 1981 and 1983 are identical to those required to prove intentional discrimination under Title VII…. One key difference, significant here, is that a § 1981 plaintiff 'must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.' … Here, Rodemaker has not stated a race discrimination claim under §§ 1981 and 1983…. [I]n sum, Rodemaker failed to allege sufficient facts to state a racial discrimination claim under §§ 1981 and 1983, including that, but-for his race, the defendants would have renewed his contract." (citations omitted)).

Next, to the extent that Stinson alleges a Section 1983 claim against Jones

based solely on retaliation, she must plausibly allege the ultimate elements for such a claim. And, so, considering *Comcast*, "to state a retaliation claim under § 1981, a plaintiff must plausibly allege: (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) but-for causation between the retaliatory animus and the adverse employment action." *Ramirez*, 2020 WL 13610413, at *4 (citing *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)).

> Protected activity in this context includes making a charge of discrimination or retaliation or participating in an investigation of the same. *Nelson v. Lowe's Home Centers, Inc.*, No. 3:11-CV-1497-B, 2012 WL 3731092, at *4 n.6 (N.D. Tex. Aug. 29, 2012) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). An adverse employment action in the retaliation context is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). But-for causation is adequately pleaded with allegations that demonstrate the adverse action would not have been taken but for the defendant's alleged retaliation. *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 562 (5th Cir. 2019); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (citations omitted). Stated another way, factual allegations that demonstrate a defendant fired a plaintiff in retaliation for filing an EEOC charge plausibly allege but-for causation.

*Id.*

And, so, for the purpose of pleading, Stinson's alleging that, in July 2020, she participated in an investigation into Jones's alleged racial and gender discrimination targeting another faculty member, which concluded that the claims were unsubstantiated, *see* Dkt. No. 19, ¶¶ 34 & 35, qualifies as engaging in protected activity.

But Stinson's allegedly forced resignation did not occur until September 2021, some fourteen months later. And that is too far removed in time to plausibly allege a "causal connection between the investigation and [her] discharge." *Goudeau v. City of Tomball, Tex.*, 68 F.3d 468, 1995 WL 581820, at *2 & n.10 (5th Cir. 1995) (per curiam) ("Over ten months passed between Goudeau's participation in the investigation and his discharge."); *see also United States v. Lee*, 966 F.3d 310, 320 n.3 (5th Cir. 2020) ("Unpublished decisions issued before 1996 are binding precedent. 5TH CIR. R. 47.5.3.")).

And, to the extent that Stinson relies on other alleged adverse actions more proximate to July 2020, what she alleges is a continuation of acts by Jones that she alleges started in September 2019, none of which are alleged to be explicitly based on race or tied to her participation in the investigation. And, so, the undersigned cannot find that, but for this protected activity (participating in an investigation of race discrimination), these acts would not have occurred. *See, e.g.*, *Ramirez*, 2020 WL 13610413, at *4 ("But-for causation is adequately pleaded with allegations that demonstrate the adverse action would not have been taken but for the defendant's alleged retaliation." (citations omitted)).

And, so, Stinson also fails to nudge a retaliation claim under Section 1983 across the line from possible to plausible and equally demonstrate that Jones is not entitled to qualified immunity on this claim.

## Recommendation

The Court should grant the motions to dismiss filed by Defendants Daniel

Jones and Kevin McGinnis [Dkt. Nos. 25 & 28] to the extent that Plaintiff Crystal Stinson fails to plead specific facts that allow the Court to reasonably infer that either defendant is liable for the harms alleged and that defeat each defendant's qualified immunity defense.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 16, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE