IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CRYSTAL STINSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-810-M-BN |
| | § | |
| KEVIN MCGINNIS, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Through a first amended complaint [Dkt. No. 19] (the "FAC"), Plaintiff Crystal

Stinson, a former assistant professor at the Texas A&M University College of

Dentistry (the "University"), brought claims of discrimination, retaliation, and

harassment based on color and/or race, in violation of 42 U.S.C. §§ 1981 and 1983,

against Defendants Daniel Jones, Joshua Liescheski, and Kevin McGinnis, current

and former employees of the University.

In sum, Stinson, an African American female, has alleged that, while employed

by the University, she worked in a hostile environment caused by Jones and

Liescheski; that this hostility was based on race; that McGinnis (alleged to be the

University's Vice President of Operations and Chief Compliance Officer) failed to stop

the racial harassment and physical intimidation caused by Jones and Liescheski; and

that she was retaliated against for participating in an investigation into Jones's

alleged racial and gender discrimination targeting another faculty member.

While Liescheski has yet to appear in this lawsuit, *see, e.g.*, Dkt. Nos. 27 & 35,

McGinnis and Jones moved to dismiss the claims asserted against them in the FAC, *see* Dkt. Nos. 25, 26, & 28-30.

The undersigned United States magistrate judge entered findings of fact and conclusions of law recommending that the Court grant the motions to the extent that Stinson fails to plead specific facts that allow the Court to reasonably infer that either defendant is liable for the harms alleged and that defeat each defendant's qualified immunity defense [Dkt. No. 46] (the "FCR").

And Senior United States District Judge Barbara M. G. Lynn accepted the FCR, dismissing the claims against McGinnis and Jones without prejudice to Stinson's ability to file a motion to amend seeking only to replead the allegations that the undersigned found factually and/or legally insufficient. *See* Dkt. No. 48; *Stinson v. McGinnis*, No. 3:23-cv-810-M-BN, 2024 WL 4152703 (N.D. Tex. Aug. 16, 2024), *rec. accepted*, 2024 WL 4151175 (N.D. Tex. Sept. 11, 2024) ("*Stinson I*").

Stinson filed her motion to amend. *See* Dkt. No. 49. And the parties filed briefing. *See* Dkt. Nos. 50-55.

For the following reasons, the undersigned now recommends that the Court grant the motion to amend in part and deny it in part.

## Legal Standards

Federal Rule of Civil Procedure 15 requires that leave to amend be granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2).

Because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006),

the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One such reason is futility. That is, "[i]f the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

In this regard, the Court must "ask whether, in [her] proposed [second] amended complaint [the ("SAC"), Stinson] has pleaded 'factual content that allows the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *cf. Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018) ("Where the district court's denial of leave to amend was based solely on futility, [the United States Court of Appeals for the Fifth Circuit] applies a de novo standard of review identical, in practice, to the standard used for reviewing a dismissal under [Federal Rule of Civil Procedure] 12(b)(6)." (cleaned up)).

The applicable facial plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up); *see, e.g., Parker v. Landry*, 935 F.3d 9, 17 (1st

Cir. 2019) (Where "a complaint reveals random puffs of smoke but nothing resembling real signs of fire, the plausibility standard is not satisfied."); *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.")

## Analysis

Through this lawsuit, Stinson brings claims under Section 1981 for discrimination and retaliation against former and current state employees, while, in a separate state-court proceeding, she has alleged violations of the Texas Labor Code against the University.

And, where the individual defendants here are "state actors because they are state employees," "for [Stinson] to recover damage from [them] for alleged violations of rights secured by § 1981, those claims must be asserted through § 1983." *Montgomery-Smith v. George*, 810 F. App'x 252, 256 (5th Cir. 2020) (per curiam) (citing *Felton v. Poles*, 315 F.3d 470, 482 (5th Cir. 2002) ("[S]tate employment is generally sufficient to render the defendant a state actor." (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n.18 (1982))), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

So, although, as part of its analysis, the Court must examine the plausibility of Stinson's discrimination and retaliation allegations, the Court is not now asking whether, through the proposed SAC, Stinson has pleaded enough factual content to allow for a reasonable inference that the University is liable for a wrongful

employment practice.

Instead, where McGinnis and Jones have asserted qualified immunity as a basis to dismiss Stinson's Section 1983 claims, she must demonstrate that, through the proposed SAC, she has now pleaded "specific facts that both allow the [C]ourt to draw the reasonable inference that [either McGinnis or Jones (or both)] is liable for the harm [that Stinson] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *cf. Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (Courts must "examine each individual defendant's entitlement to qualified immunity separately." (cleaned up)).

Or, put another way, because the "qualified-immunity inquiry is two-pronged," *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)), the proposed SAC must yield a "yes" to two questions:

- Do "the facts, viewed in the light most favorable to the party asserting the injury, [plausibly allege] that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600).

- Was "the right at issue … 'clearly established' at the time of the alleged misconduct"? *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Pearson*, 555 U.S. at 232).

That's typically a heavy lift. *See, e.g., Cunningham*, 983 F.3d at 191 ("The 'clearly established' prong is difficult to satisfy."); *but cf. Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (Thomas, J., respecting denial of cert.) (calling on his colleagues to, "in an appropriate case" "reconsider either our one-size-fits-all test or the judicial doctrine of qualified immunity more generally" and asking "why should university officers, who have time to make calculated choices about enacting or enforcing

unconstitutional policies, receive the same protection as a police officer who makes a split-second decision to use force in a dangerous setting?"); *Gonzalez v. Trevino*, 42 F.4th 487, 507 (5th Cir. 2022) (Oldham, J., dissenting) (suggesting that officers who do not make split-second decisions "should not get the same qualified-immunity benefits that cops on the beat might get"); *Weary v. Foster*, 52 F.4th 258, 259 (5th Cir. 2022) (Ho, J., concurring in denial of rehearing en banc) ("When public officials are forced to make split-second, life-and-death decisions in a good-faith effort to save innocent lives, they deserve some measure of deference. By contrast, when public officials make the deliberate and considered decision to trample on a citizen's constitutional rights, they deserve to be held accountable." (citations omitted)); *Villareal v. City of Lardeo, Tex.*, ___ F.4th ____, No. 20-40359, 2025 WL 1039418, at *7 (5th Cir. Apr. 8, 2025) (en banc) (Oldham, J., concurring) (observing that, where "officials had sufficient 'time to make calculated choices,'" "[i]t is not immediately obvious what purpose qualified immunity should serve in such circumstances" (quoting *Hoggard*, 141 S. Ct. at 2422)).

I.  **Stinson's proposed amended factual allegations raise a reasonable inference that Jones subjected her to a hostile work environment based on race and retaliated against her for participating in a protected activity. And those allegations defeat Jones's qualified immunity defense with equal specificity.**

Starting with qualified immunity's legal notice prong, as the Court previously found, Stinson cited a published decision from the Fifth Circuit, *Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019), which identified "multiple cases in which [the Court of Appeals has] considered race-based hostile work environment claims asserted under section 1983," and then remarked that, "[e]ven without all this caselaw, it would

necessarily follow that if the Constitution makes it unlawful to create a hostile workplace in response to a public employee's sex, then it is also unlawful to engage in that hostility in response to a worker's race. After all, the latter category of discrimination is subject to even more exacting constitutional scrutiny than the former." *Id.* at 417 (citations omitted).

*Halstead* also discussed clearly established law as to racial retaliation claims, *see id.* at 420 – and it set out clearly established law as to the deliberate indifference required to subject McGinnis to liability under a hostile work environment claim, *see id.* at 418.

After *Halstead*, in *Comcast Corp. v. National Association of African American-Owned Media*, 589 U.S. 327 (2020), the United States Supreme Court made clear that, under Section 1981, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right," *id.* at 341.

"That means the pleading burden under Section 1981 is higher than under Title VII." *DiBenedetto v. AT&T Servs., Inc.*, 1:21-cv-04527-MHC-RDC, 2022 WL 1682420, at *8 n.7 (N.D. Ga. May 19, 2022) ("Section 1981 unequivocally requires that a plaintiff plead and prove but-for causation, which stands in contrast to Title VII's reduced motivating factor requirement." (citations omitted)); *accord Reyna v. Epiroc Drilling Sols., LLC*, No. 3:23-cv-1005-X, 2025 WL 317568, at *3 n.18 (N.D. Tex. Jan. 28, 2025) ("Notably, as an action laying in tort, section 1981 claims also have a strict but-for causation requirement. By contrast, traditional Title VII

lawsuits only require a showing that discriminatory factors played some role in the decision." (citations omitted)).

But *Comcast*'s clarification as to the statutory showing that Section 1981 requires does not call into doubt *Halstead*'s holdings as to clearly established law.

"And, so, '[g]iven that the Equal Protection Clause protects against a racially hostile work environment [and retaliation at work based on race], the question becomes whether [Stinson] has sufficiently alleged that was what [s]he faced.'" *Stinson I*, 2024 WL 4152703, at *11 (quoting *Halstead*, 916 F.3d at 417).

Turning to the pleadings, then, and starting with the hostile work environment claim, such an "environment exists when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Halstead*, 916 F.3d at 417 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord Hudson v. Lincare, Inc.*, 58 F.4th 222, 229 (5th Cir. 2023).

That pervasiveness was present in *Halstead*, *see* 916 F.3d at 417-18, and, according to an independent investigation report, "'race was at the core of the differences' in the conflict" there, *id.* at 418. "And Halstead publicly admitted not only that harassment occurred, but also that it resulted from Johnson's 'skin color.'" *Id.*

But, where a plaintiff has "the burden of initially pleading facts that, taken as true, permit the court to plausibly infer that, 'but for race, [she] would not have suffered the loss of a legally protected right,'" *Hoyt v. Am. Nat'l Ins. Co.*, No. 3:20-cv-545-L, 2021 WL 2823449, at *5 (N.D. Tex. July 6, 2021) (quoting *Comcast*, 589 U.S.

at 341), smoking-gun facts, like those present in *Halstead*, are not necessary to plead a plausible claim for hostile work environment based on race where "[d]irect or circumstantial evidence may provide plaintiffs with a basis for allegations of racial motivation or animus," *Garibay v. G.T. Sirizzotti, Ltd.*, No. 5:24-CV-0214-JKP-RBF, 2024 WL 4965637, at *4 (W.D. Tex. Dec. 2, 2024) (cleaned up; citing *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)).

That is because, "[a]lthough 'naked allegations' of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be – and commonly is – demonstrated by circumstantial evidence." *Body by Cook*, 869 F.3d at 386 (cleaned up). And "[a]n allegation that similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the section 1981 claim." *Id.* (cleaned up).

The Court previously found (1) that, "after reviewing the FAC, [it was] left with an impression that Jones was hostile toward Stinson," *Stinson I*, 2024 WL 4152703, at *13, but (2) that, through the FAC, "Stinson fail[ed] to plead factual content that allows for the reasonable inference that the hostile work environment created by Jones was because of race and thus fail[ed] to plausibly allege a race-based hostile work environment claims under section 1983," *id.* at *12 (cleaned up).

Part of this conclusion was because, while Stinson identified other professors or dental professionals whom she alleged were "likewise discriminated against and harassed based on race and/or on color by Jones and Liescheski," the

> allegations [in the FAC] concerning Jones's harassment of other
> similarly situated employees are conclusory. For example, she alleges

that "[t]he conduct of Jones and Liescheski was based on race"; that the current or former employees identified "experienced the same or similar harassment as" she did; and that they "were likewise discriminated against and harassed based on race and/or on color by Jones and Liescheski." These "naked assertions devoid of further factual enhancement" that, to an extent, also count as "legal conclusions" should not be "presume[d] true."

*Id.* (cleaned up); *see also id.* ("Jones's alleged 'harassment of [people of color] other than [Stinson] is relevant to a hostile work environment claim.' *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 653 (5th Cir. 2012) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477-78 (5th Cir. 1989) ('Even a woman who was never herself the object of harassment might have a Title VII claim if she were forced to work in an atmosphere in which such harassment was pervasive.' (cleaned up; quoting *Vinson v. Taylor*, 753 F.2d 141, 146 (D.C. Cir. 1985)))); *see also Shattuck v. Kinetic Concepts, Inc.*, 49 F.3d 1106, 1109-10 & n.9 (5th Cir. 1995) ('There is no proscription of evidence of discrimination against other members of the plaintiff's protected class; to the contrary, such evidence may be highly probative, depending on the circumstances.' (collecting cases))." (citation modified)).

Through the proposed SAC, Stinson adds factual content to allege the experiences of the other employees who were merely identified in the FAC. *See* Dkt. No. 49-1 at 5-16.

These additional factual allegations allow for a reasonable inference that the hostile work environment that Jones created was due to racial animus – or, put another way, that, but for race, the hostile work environment that Stinson was subjected to would not have existed. For example, Stinson alleges that multiple other employees, whom she specifically identifies, would testify that Jones provided

opportunities to advance to professors and other professionals who were white but with less tenure or less experience than their African American colleagues and that Jones harassed African American employees but not their white counterparts.

So Stinson offers more than naked allegations of discriminatory intent. And these allegations support the necessary inference that the hostility that she experienced was based on race.

And, while many of Stinson's amended allegations point to circumstantial evidence of racial animus, the substantial amount of circumstantial evidence alleged allows an inference that race-based hostility and racial animus on the part of Jones was pervasive and, so, provides a basis to allow this disparate treatment claim to survive to discovery. *Cf. Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020) ("A motion to dismiss for failure to state a claim is not meant to … test the merits of a lawsuit" but "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief.").

At a subsequent stage of this proceeding, the Court may need to determine whether certain employees are true comparators. But, as to disparate treatment claims, "[f]ollowing [*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019),] all that [is] required at the motion to dismiss stage [is] that [a plaintiff] plead facts that support an inference that she [suffered an adverse employment action] because of her protected status." *Thomas v. Dall. Indep. Sch. Dist.*, No. 23-10882, 2024 WL 2874367, at *5 (5th Cir. June 7, 2024) (cleaned up). So "scrutinizing whether [a plaintiff's] fellow employees were really 'similarly situated' … [is] more suited to

the summary judgment phase." *Cicalese*, 924 F.3d at 768 (cleaned up); *compare Jasso v. Midland-Odessa Transit Mgmt., Inc.*, MO:22-CV-00250-DC-RCG, 2023 WL 6474435, at *2 (W.D. Tex. Sept. 19, 2023) ("To survive a motion to dismiss, a plaintiff pleading a claim for hostile work environment must plead two 'ultimate elements': 1) an adverse employment action, 2) taken against a plaintiff because of her protected status." (citing *Cicalese*, 924 F.3d at 767)).

Turning to the retaliation claim, "a plaintiff seeking to establish a retaliatory adverse employment action 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826-27 (5th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006)), *abrogated on other grounds by Hamilton v. Dall. Cnty.*, 79 F.4th 494 (5th Cir. 2023) (en banc); *cf. Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 741 n.5 (5th Cir. 2017) (noting that, while the Fifth Circuit has "not recognized a retaliatory hostile work environment cause of action," "[t]welve circuits have" (citations omitted)); *Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 3:16-cv-1034-D, 2017 WL 3279158, at *2 (N.D. Tex. Aug. 2, 2017) (observing that, "[g]iven the absence of binding authority, courts in the Fifth Circuit have assumed that a retaliatory hostile work environment claim can be brought" (citations omitted)).

The Court previously found that, while Stinson alleged facts in support of the protected activity and adverse employment elements, she failed to plausibly allege a

causal connection between the two. *See Stinson I*, 2024 WL 4152703, at \*14 ("[F]or the purpose of pleading, Stinson's alleging that, in July 2020, she participated in an investigation into Jones's alleged racial and gender discrimination targeting another faculty member, which concluded that the claims were unsubstantiated qualifies as engaging in protected activity. But Stinson's allegedly forced resignation did not occur until September 2021, some fourteen months later. And that is too far removed in time to plausibly allege a causal connection between the investigation and her discharge." (cleaned up)).

But, now, the expanded amended allegations as to the circumstances surrounding Jones's treatment of Stinson and other non-white employees that support a plausible disparate treatment claim also allow the Court to infer that other actions that Stinson alleges that Jones took to retaliate against her after she participated in the investigation – including in July 2020, October 2020, February 2021, April 2021, and June 2021, *see* Dkt. No. 49 at 18-20 – were taken because Stinson participated in a protected activity. And, so, the Court may now reasonably infer a plausible causal connection.

## II. Stinson's proposed amended factual allegations do not raise a reasonable inference that McGinnis was deliberately indifferent to a racially hostile work environment and defeat his qualified immunity defense with equal specificity. So, at this point, the claims against McGinnis should be dismissed with prejudice.

As the Fifth Circuit put it in *Halstead*, to allege that a supervisory official was deliberately indifferent to a racially hostile work environment requires "alleg[ations] that 'repeated complaints of civil rights violations' were followed by 'no meaningful attempt on the part of the municipality to investigate or to forestall further

incidents.'" 916 F.3d at 418 (quoting *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995)). There, "[t]he corroborated allegations of Halstead's inaction after learning about the unconstitutional work environment is the definition of deliberate indifference and thus would amount, if proven, to a violation of clearly established law." *Id.* at 419.

But, here, McGinnis is not accused of inaction. Instead, Stinson alleges that McGinnis investigated Jones and Liescheski. *See, e.g.*, Dkt. No. 49-1, ¶¶ 15(b), 15(c), & 38. And those investigations contributed to their departures.

And, so, the undersigned still finds that Stinson has not alleged the requisite deliberate indifference to bring a plausible claim against McGinnis and defeat his entitlement to qualified immunity.

And, because Stinson's second amended allegations as to McGinnis still do not plausibly allege a claim against him, the Court may dismiss the claims against him with prejudice.

## Recommendation

The Court should grant in part and deny in part the motion to amend [Dkt. No. 49] to the extent that the Court should allow Plaintiff Crystal Stinson to proceed on the proposed claims in the second amended complaint except as to Defendant Kevin McGinnis, and the Court should dismiss the claims against McGinnis with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections

within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 29, 2025

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE